IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**DANIEL L. HALL, SR.,**

    **Plaintiff**

v.                                              Case No. 2:14-cv-11644

**C.O. JUSTIN CROOK and
WARDEN DAVID BALLARD,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint (ECF No. 1). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## ALLEGATIONS IN COMPLAINT

The plaintiff's Complaint alleges that, on February 8, 2014, C.O. Crook ("Crook") came to the plaintiff's cell door at the Mount Olive Correctional Complex ("MOCC") and said "show me your dick and I'll let you have a TV." (ECF No. 1 at 4). The plaintiff states that he turned and walked away, but Crook knocked on the window and said, "Hello, I'm talking to you" and then Crook proceeded on down the tier of the pod. (*Id.*) The plaintiff further alleges that he reported this incident to MOCC Investigator Dixon and gave a tape-recorded statement. However, Crook was left on the plaintiff's unit and was not being kept away from him. The plaintiff further alleges that other inmates told him that Crook had told them that the plaintiff was a confidential informant in an attempt to get him hurt

or killed in retaliation. (*Id.* at 5). However, the plaintiff does not allege that he suffered any attack by other inmates at that time. The plaintiff further alleges that he had been told by another inmate that Crook had sexually assaulted an inmate in another unit approximately one year before and that the administration had "whitewashed" his sexual misconduct. (*Id.*) The plaintiff alleges that these actions have caused him "extreme emotional distress." (*Id.*) He seeks restraint from Crook and monetary damages.

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the court is obliged to screen each case in which a plaintiff is proceeding *in forma pauperis*,[1] and must dismiss a claim if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A. In the instant case, both statutes are applicable.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual

---

[1] The plaintiff's Application to Proceed Without Prepayment of Fees and Costs was granted in this matter on July 31, 2015. (ECF No. 9).

allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A. The plaintiff failed to properly exhaust his administrative remedies prior to filing his Complaint.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such

3

limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42

4

U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

Non-exhaustion under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). However, where the allegations in the Complaint, taken as true, demonstrate that the plaintiff has not first exhausted his administrative remedies, courts may dismiss such claims *sua sponte*. *Id.* at 199, 214-16; *see also Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *see also Banks v. Marquez*, 694 F. App'x 159 (4th Cir. 2017) (finding no error in *sua sponte* dismissal where inmate admitted that he failed to exhaust administrative remedies).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. *Id.* at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir.

5

2008). If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

At the time of the subject incidents, Section 90 of the West Virginia Code provided the procedures that inmates were required to follow when filing a grievance. In the instant case, the plaintiff's Complaint admits that he did not present the facts related to this Complaint in the state grievance procedure. (ECF No. 1 at 3). Rather, he contends that he "spoke directly with MOCC investigators and gave a recorded statement." (*Id.*)

However, the Supreme Court has specifically held that the mandatory exhaustion process is not excused by "special circumstances" such as an internal investigation, even where the inmate mistakenly believes that he has sufficiently exhausted his remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016).[2] Moreover, the plaintiff has not alleged or demonstrated that the prison's administrative remedies were unavailable to him. *Id.* at 1858-59.

Thus, taking the plaintiff's allegations in the Complaint as true, it is evident that he failed to properly exhaust the available administrative remedies before filing his Complaint. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint should be dismissed in its entirety under 42 U.S.C. §

---

[2] In *Ross*, the Supreme Court reversed a panel of the United States Court of Appeals for the Fourth Circuit which had excused the exhaustion requirement for an inmate who argued that an Internal Investigative Unit (IIU) investigation at a Maryland state prison was a substitute for the prison's administrative remedy procedures.

1997e(a) and W. Va. Code § 25-1A-2(c) for failure to properly exhaust the available administrative remedies.

### B. The Complaint fails to state a plausible claim against Warden Ballard.

If the district court should look beyond the exhaustion issue to the sufficiency of the plaintiff's claims, the Complaint fails to state a claim upon which relief can be granted. First, to the extent that the Complaint names Warden David Ballard, who was then the Warden of MOCC, as a defendant, the Complaint contains no allegations concerning specific conduct by Warden Ballard. Thus, it is apparent that the plaintiff is simply attempting to hold Warden Ballard liable under a theory of *respondeat superior* for the alleged conduct of his employees. Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution. *Iqbal*, 556 U.S. at 675-76; *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). (ECF No. 12 at 5).

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

7

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

The plaintiff has not alleged that Warden Ballard had actual knowledge of the incidents alleged in the Complaint or of any perceived threat to the plaintiff. The plaintiff has simply not plausibly alleged that Warden Ballard was actually aware that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to the plaintiff. Thus, the Complaint fails to state a plausible constitutional claim against Warden David Ballard and the claims against him should be dismissed pursuant to the dictates of *Twombly* and *Iqbal*.

### C. The Complaint fails to state a plausible claim for relief against C.O. Crook.

Nor do the plaintiff's allegations against Crook in the instant Complaint rise to the level of an actionable constitutional violation. At best, the plaintiff has alleged that Crook verbally abused him and he has not demonstrated that he suffered any actual physical harm caused by Crook. "Verbal abuse of a prisoner, even of the lewd variety, is not

8

actionable under 42 U.S.C. § 1983." *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Burroughs v. Petrone*, 138 F. Supp.3d 182, 204-05 (N.D.N.Y. 2015) (citing cases supporting that allegations of isolated verbal sexual harassment without allegations of actual sexual abuse fail to state a cognizable claim under § 1983). Accordingly, the plaintiff's allegations that Crook verbally abused or harassed him fail to state a plausible Eighth Amendment claim and should be dismissed.

Furthermore, to the extent that the plaintiff is attempting to raise a retaliation claim against Crook, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged such a claim. To establish a claim of retaliation under section 1983, an inmate plaintiff must allege facts showing that the alleged retaliatory action either violated a constitutional right or "constitute[d] punishment for [his] exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). However, claims of retaliation by inmates are often viewed with skepticism. *Cochran*, 73 F.3d at 1317.

In order to sufficiently state a retaliation claim, a plaintiff must establish that (1) he engaged in constitutionally protected activity; (2) the defendants took some adverse action that would deter a person of ordinary firmness from engaging in that conduct; and (3) there was a causal connection between the protected activity and the defendants' conduct. *Hendrick v. Bishop*, No. 14-cv-2544, 2016 WL 1060212 (D. Md., Mar. 14, 2016) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). However, not all retaliatory conduct is actionable. *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). A plaintiff seeking to recover for retaliation must show more than a "*de minimis* inconvenience" to the exercise of his rights to establish the

9

adverse action element. *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *Id.* at 785; *see also Snodgrass v. Gilbert*, No. 7:16-cv-00091, 2017 WL 1049582, *16 (W.D. Va. Mar. 17, 2017). Retaliation is often difficult to prove by direct evidence, and conclusory allegations of retaliatory motive that are unsupported by material facts are insufficient to state a claim under section 1983. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

Even liberally construing the plaintiff's allegations to be alleging that he engaged in constitutionally protected activity when he reported the verbal abuse by Crook, and that, in retaliation, Crook told other inmates he was a confidential informant, the plaintiff has not sufficiently alleged that he suffered any adversity or harm from Crook's conduct. *See, e.g., Chatman v. Anderson*, No. 7:05-cv-00407, 2005 WL 2090824 (W.D. Va. Aug. 29, 2005) (no cognizable constitutional claim where a plaintiff suffered no harm from the defendant's comment to other inmates that he was a "snitch.") Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim upon which relief can be granted against C.O. Crook.

### D. The plaintiff's claims for declaratory and injunctive relief are moot in light of his transfer from MOCC.

Since the filing of his Complaint, the plaintiff has been released from the custody of the West Virginia Division of Corrections and is now in the custody of the Federal

Bureau of Prisons in North Carolina. Based upon the plaintiff's transfer from MOCC, all forms of declaratory and injunctive relief sought in this court are now moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") For these reasons, the undersigned proposes that the presiding District Judge **FIND** that any claims for declaratory and injunctive relief made by the plaintiff herein must be denied and dismissed as moot.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and dismiss this civil action from the docket of the court.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff at the following address:  Daniel Lee Hall, Sr., #09019-088, FCI Butner Medium II, Federal Correctional Institution, P.O. Box 1500, Butner, NC 27509.

<u>July 12, 2018</u>

Dwane L. Tinsley
United States Magistrate Judge